UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HECTOR ABREU DOMINGUEZ,

      Plaintiff,                       Case No. 2:26-cv-897-KCD-DNF

    v.

MATTHEW MORDANT, IN HIS
OFFICIAL CAPACITY WARDEN
OF FLORIDA SOFT SIDE SOUTH,
*et al.*,

      Defendants,

                          /

## ORDER

Petitioner Hector Abreu Dominguez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued imprisonment violates the Fifth Amendment and the Administrative Procedures Act ("APA"). Respondents oppose the petition (Doc. 8), and Dominguez replied (Doc. 9). For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Dominguez is a Cuban citizen who arrived at the U.S. border in 2022. (Doc. 8-1 at 2-4.) He was apprehended, served a notice to appear, and released. (*Id.* at 4-6.) He was recently arrested by ICE and has been in immigration custody since March 12, 2026. (*Id.* at 5, 7.) As best the Court can tell, Dominguez does not have a final removal order. (*Id.* at 9.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

Dominguez's habeas petition presses several substantive claims. They are addressed in turn below.

**A. INA (Counts One and Four)**

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are categorically not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under §

3

1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Dominguez, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. (Doc. 1 ¶ 93.) But this argument runs headlong into the facts. Dominiguez was apprehended at the border while seeking admission. That puts him squarely under § 1225. *See, e.g., Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Dominguez concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Jennings*, 583 U.S. at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold.

4

When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Dominguez may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Dominguez—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Dominguez's continued detention without a bond hearing cannot be in violation of the INA.

**B. Due Process (Counts Two and Three)**

Even if Dominguez's detention without a bond hearing is authorized by the INA, he argues it violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 32-36.) Not so. As this Court has already explained in detail, such a claim is not available for aliens held under § 1225. *See Lezcano v. Ripa*, No. 2:26-cv-766-KCD-DNF, 2026 WL 1004523, at *2-5 (M.D. Fla. Apr. 14, 2026). The reasoning from *Lezcano* is equally applicable here. *Id.*

Dominguez also seems to claim that the Government's decision to revoke his parole and return him to custody is a separate substantive due process violation. (Doc. 1 at 33-34.) But that argument rests on a faulty premise. There is no substantive right to remain free on parole. Release on parole is a matter of administrative grace that can be revoked at the agency's discretion; it is not a permanent constitutional entitlement. *See* 8 C.F.R. § 212.5(e)(2).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation

happens only when that machinery breaks down—when the detention loses its reasonable connection to immigration proceedings and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Dominguez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is an "applicant for admission" under § 1225. The INA explicitly authorizes his detention. And under the rules, ICE may revoke a noncitizen's parole to proceed with removal. 8 C.F.R. § 212.5(e). The Government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, ICE revoked Dominguez parole specifically to proceed with expedite removal. (*See* Doc. 1 at 2.) Returning him to custody thus serves a recognized, legitimate government objective under § 1225.

One can certainly understand Dominguez's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Dominguez's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

### C. APA (Count Five)

Dominguez also brings a claim under the APA. The difficulty here is twofold. First, he has alleged these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-

tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at \*7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for such claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Dominguez has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Dominguez is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at \*3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at \*7 (D.N.M. Feb. 11, 2026).

9

## IV. Conclusion

Dominguez is legally situated at the border and subject to mandatory detention under 8 U.S.C. § 1225. Because that statute provides no right to a bond hearing, and the Due Process Clause does not step in to supply one for an arriving alien, his continued custody is lawful. Accordingly, Dominguez's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on April 23, 2026.

Kyle C. Dudek
United States District Judge

10